Ross v. Omaha & C. B. Street R. Co.

HERBERT P. ROSS, APPELLEE, V. OMAHA & COUNCIL BLUFFS
STREET RAILWAY COMPANY, APPELLANT.

FILED MARCH 12, 1923. No. 22209.

1. **Trial:** DIRECTION OF VERDICT. *Held,* that the trial court did not
err in refusing to direct a verdict for defendant, sufficient com-
petent evidence having been introduced by plaintiff to warrant the
submission of the case to the jury.

2. **Appeal:** CONFLICTING EVIDENCE. The verdict of the jury on dis-
puted questions of fact will not be disturbed unless clearly wrong.

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE. *Affirmed.*

*John L. Webster,* for appellant.

*W. J. Connell, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, ALDRICH,
DAY and GOOD, JJ., RAPER and TROUP, District Judges.

ALDRICH, J.

Action by plaintiff, Herbert P. Ross, to recover dam-
ages alleged to have been sustained by reason of a col-
lision between the motor truck which he was driving
and a street car of defendant, Omaha & Council Bluffs
Street Railway Company. The accident occurred on
January 23, 1918, at the intersection of Nineteenth and
Vinton streets in the city of Omaha. Plaintiff ap-
proached and entered the intersection from the south,
and, he alleged, was struck by defendant's street car with
great force, knocking his truck to one side and causing
personal injuries. Suit was brought to recover damages
in the sum of $6,700. Defendant, in its answer, denied
each and every allegation of plaintiff's amended petition,
and alleged the street car was proceeding northeasterly
along Vinton street at a proper, lawful and safe rate
of speed; that as it approached the intersection the
motorman sounded his gong; that plaintiff operated the
automobile truck unlawfully, driving at a rate of speed
in excess of six miles an hour at the street intersection;

that he failed to sound a warning or to look for approaching street cars; and that plaintiff negligently drove his truck against the side of the street car without any fault of defendant or its employees. Defendant's allegations were put in issue by plaintiff's reply. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict. Both motions were overruled, and the case was submitted to the jury, who by their verdict assessed plaintiff's damages in the sum of $5,000. Defendant's motion for a new trial was overruled and judgment rendered on the verdict. Defendant appeals.

Appellant contends that the case comes within the rule laid down by the United States federal court and by severel state courts, and urges the following proposition: "The failure of the plaintiff to look for a street car and to stop his automobile truck before attempting to drive onto the track directly in front of or against the front end of the moving street car was such an act of gross negligence as would have justified and required the court to direct a verdict for defendant company." A careful examination of the record discloses facts which make a case not within the rules discussed by counsel for appellant and which justifies and sustains the jury's finding in plaintiff's favor.

The issue then is a question of fact and must be decided as such according to law, and being a question of fact, what the jury finds, as a matter of law, cannot under the rules of this court be disturbed unless clearly wrong. This is one of the substantial rules of this court and we are not justified in going behind it under the facts in this case. The verdict of the jury is in accordance with the facts.

The following is a quotation from the trial judge's instructions: "The burden of proof is upon the defendant to establish by a preponderance of the evidence that the plaintiff was guilty of negligence contributing to cause the collision in question in a degree sufficient

to defeat his recovery, and if you find from all the evidence that the defendant was guilty of negligence, and that the plaintiff was also guilty of negligence, it would be the duty of the jury to compare the negligence of the respective parties, and if upon such comparison the contributory negligence of the plaintiff is found to exceed in any degree that which, under the circumstances, amounts to slight negligence, or if the negligence of the defendant falls in any degree short of gross negligence, under the circumstances, the contributory negligence of the plaintiff, however slight, will defeat a recovery. On the other hand, if upon such comparison the negligence of the plaintiff is found to be slight and the negligence of the defendant gross, the plaintiff may recover, but in such case it is the duty of the jury to deduct from the amount of damage sustained, if any, such amount as plaintiff's contributory negligence bears to the whole amount of such damage."

The evidence of the witness Swanson is invaluable to this case. He was with the plaintiff and in a position to see the car in question, to note and judge the speed at which it ran and the control of the same as handled by the motorman. This testimony was valuable, inasmuch as it corroborated the essential parts of the testimony of plaintiff.

It is noticeable that the street car "was running at a proper and reasonable rate of speed," which statement, it is claimed, is confirmed by the motorman and other witnesses for the defendant company. The story of plaintiff's witnesses was confirmed by undisputed physical conditions. The witness Swanson testified substantially that the street car was running 20 or 25 miles an hour when it struck the motor truck.

According to plaintiff's testimony the accident happened at 8:15 in the morning. The day was clear. He was driving a truck for Sunderland Brothers Coal Company and was accompanied by a helper, the witness Swanson. Plaintiff made a delivery of coal on South

Nineteenth street and approached the intersection in question with about one ton of coal in his truck. He came to a complete stop when he reached the intersection; the front end of his machine was parallel with the sidewalk on the south side of Vinton street. He looked up Vinton street, both to the right and to the left, and, seeing no street car, sounded a warning with his klaxon and proceeded to cross the intersection to turn west. His car was in low gear, moving at the rate of 3 or 4 miles an hour for a distance of about 25 feet to the north rail of the car track. Plaintiff testified that he did not see the street car until it was 10 or 12 feet from him and when the front wheels of his truck were just about to the rail of the car track. Plaintiff was rendered unconscious and remembered nothing more about the accident. Swanson, the helper, corroborated him in his testimony and added the material statement that no warning was sounded by the motorman from the time Swanson first saw the street car up to the time of the collision. The street car, according to the record, traveled 150 or 200 feet while plaintiff's truck moved 25 feet. This fact evidently was taken into consideration by the jury in arriving at their verdict.

The claim is made that the verdict is excessive and is not borne out by the record. The following testimony was given concerning his injuries: "Q. After you recovered consciousness, while you were at the hospital, to what extent did you suffer pain, either in your head or other parts of your body? A. Well, I suffered with my back, my head and my arm. Q. What arm? A. My right arm. Q. Now, referring to your head, where was the pain in that? A. In the upper part of my jaws, I was struck in the temple here (indicating); I had a large lump on my temple; my nose was all stopped up, I couldn't breathe, and blood was coming through my mouth. Q. What was that, fresh blood? A. Yes, sir. Q. You say your nose was plugged up. What do you mean by that? A. The doctors took cotton and medicine and

plugged it up so it wouldn't bleed, but it kept bleeding through my mouth. Q. Then, where would the blood get out of your head? A. I would have to have a vessel (interrupted) Q. No, but what part, through your nose or your mouth or what? Would you spit it out to get rid of it? A. Yes, sir; it would come through my mouth. Q. To what extent while you were at the hospital did you have this bleeding or hemorrhage from the nose? A. All the time I was there. * * * Q. Now, state to the jury if you ever had any bleeding, or difficulty of that kind, before. A. No, sir; I never had any."

The plaintiff was injured in the back and on the hip or side, also his hearing was affected and was not nearly as good at the time of the trial as before the injury. He was at the hospital about two weeks and had internal bleeding in the head all the time he was there and for some time afterwards. He was injured to such an extent that he had hemorrhages every few weeks and they continued nearly every day until some time in the winter. His hearing in the right ear since the accident is affected, making it very difficult and almost impossible for him to hear. He is highly nervous and irritable and does not sleep well at night. Such being the true condition, we do not believe a verdict of $5,000 is in any way excessive.

Taking all matters into consideration, we hold that the verdict should be and it is,

AFFIRMED.

LETTON, J. dissenting.

Disregarding all the testimony for the defense, and considering alone that given by the plaintiff's witnesses in its most favorable aspect, it clearly establishes that plaintiff, the driver of the truck, was grossly negligent in failing to see the street car until it was within a few feet from him. He testifies that the first and only time he saw the street car was when the front wheels of the truck were on the first rail of the nearest street car

track; the street car being at that time about 10 or 12 feet away. The truck was at a standstill at the curb, and his witness, Swanson, who was riding with him, says the street car was in plain sight while plaintiff was driving from the curb to the car track. It was daylight and there was nothing to obstruct the view. He might have stopped in plenty of time if he had looked to see whether the street car was approaching. His negligence was gross, according to his own testimony, and therefore the evidence is not sufficient to support a verdict in his favor.